UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TENG LEE,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL RESERVE BANK OF MINNEAPOLIS,<br><br>Defendant. | Court File No. _____<br><br><br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff Teng Lee was a Law Enforcement Officer employee of the Federal Reserve Bank of Minneapolis ("Defendant" or "Bank") for about two-and-a-half years, from June 16, 2019, until January 21, 2022, when the Bank fired him because of his religious objection to the COVID-19 vaccine.

2. Several months after the COVID-19 vaccine became available to Americans, the Bank instituted a mandatory vaccination policy ("Policy"). Lee applied for an exemption, and the Bank exempted Lee from that Policy. In turn, Lee was required to wear a mask and maintain physical distance from other Bank employees, with which he complied dutifully. In November 2021, the Bank made the Policy more stringent on Lee and forced him to segregate from vaccinated employees by not allowing him to eat at the cafeteria and forbidding him from using the on-site fitness facility.

3. Then, on December 16, 2021, Defendant suddenly reversed course and notified Lee that it would no longer accommodate his religious beliefs because doing so would

1

somehow create for it an "undue hardship." This is despite (a) Lee's willingness to mask, test, and distance, (b) the Bank allowing employees to be unvaccinated for months while a vaccine was available, (c) the availability of alternatives which would allow Lee to keep working and not affect the safety of his coworkers, and (d) scientific evidence available at the time that the COVID-19 vaccines protect the individual recipients but do not reduce the virus' transmissibility.

4. There was and is no undue hardship for the Bank to keep Lee employed; rather, upon information and belief, the Bank accommodates other employees without any real difference between those employees and Lee in terms of their proximity to others. In addition, during the entire time Lee was allowed to mask and distance, there were hundreds of construction workers working within the Bank's building daily. Lee was required to screen these construction workers each day. During this time, he was doing in-person work with a greater volume of screenings than he did when the Bank was operating under pre-COVID circumstances. Throughout that entire time, Lee masked and maintained physical distance dutifully, with no problems.

5. To make matters worse, the Bank failed to make any effort, as part of the interactive process, to provide Lee opportunities to work different jobs at the Bank to accommodate his religious objection. The Bank made no effort to help him, despite its obligation to do so.

6. Because Lee's sincerely held religious beliefs prevent him from becoming vaccinated with the COVID-19 vaccine, and because the Bank's Policy was not narrowly

tailored to serve a compelling state interest, Lee is entitled to relief under Title VII of the Civil Rights Act and the Religious Freedom Restoration Act ("RFRA").

## THE PARTIES

7. Plaintiff Teng Lee resides in Brooklyn Center, Minnesota, within the District of Minnesota.

8. Defendant Bank is one of twelve Federal Reserve Banks that make up the Federal Reserve System. Its offices are located at 90 Hennepin Avenue, Minneapolis, Minnesota 55401, within the District of Minnesota. The Bank is an instrumentality of the United States government, established by the Federal Reserve Act, 12 U.S.C. § 341 ("the FRA"). *See Fed. Res. Bank v. Metrocentre Improv. Dist. #1*, 657 F.2d 183, 185 n.2. (8th Cir. 1981). The Bank is an employer as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

## JURISDICTION AND VENUE

9. The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 42 U.S.C. §§ 2000e-(j) and 2000e-2 (Title VII), and 42 U.S.C. § 2000bb-1(c) ("RFRA"). Lee alleges federal questions arising under the laws of the United States under Title VII and RFRA, the Bank is a covered entity under RFRA, and this Court has jurisdiction in civil actions against the United States, of which the Bank is a federal instrumentality under the RFRA.

10. This Court has authority to award the requested relief pursuant to Title VII of the Civil Rights Act and RFRA; and costs and attorneys' fees pursuant to Title VII and 42 U.S.C. § 1988(b).

11. This Court has both general and specific jurisdiction over the Bank, which is located within the District of Minnesota, and whose acts alleged herein took place in the District of Minnesota.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), (b)(2) and (e) and 42 U.S.C. §2000e-5(f)(3) because the Bank is an instrumentality of the United States doing business in the District, and a substantial part of the events or omissions giving rise to Lee's claims occurred in this judicial District.

## FACTUAL ALLEGATIONS

13. Lee began his employment with the Bank on or about June 16, 2019. He served as a law enforcement officer at the Bank. In this role, Lee was responsible for the enforcement of federal and state law and the administrative rules and regulations of the Bank. He used computers, surveillance equipment, x-ray and metal screening equipment, and several alarm systems.

14. On or about March 11, 2020, at the onset of the COVID-19 pandemic in the United States, the Bank informed its workforce, including Lee, that it was implementing a mandatory remote work policy until employees were otherwise notified.

15. Lee was on call but was told to stay home until on or about June 18, 2021, when he was called back to work at the Bank building a few days per week. At that time, most of the employees continued working remotely, but vendors at the Bank building, including construction workers, increased during this time.

16. Beginning in March 2021, COVID-19 vaccinations became widely available to adults in the United States.

17. All the COVID-19 vaccines available in the United States involve the use of aborted fetal cells in their manufacturing and/or testing. In particular:

• Johnson & Johnson/Janssen: Fetal cell cultures are used to produce and manufacture the J&J COVID-19 vaccine and the final formulation of this vaccine includes residual amounts of the fetal host cell proteins (≤0.15 mcg) and/or host cell DNA (≤3 ng).

• Pfizer/BioNTech: The HEK-293 abortion-related cell line was used in research related to the development of the Pfizer COVID-19 vaccine.

• Moderna/NIAID: Aborted fetal cell lines were used in both the development and testing of Moderna's COVID-19 vaccine.

### Lee's Sincerely Held Religious Beliefs

18. Teng Lee is a Christian. He believes, based on his religion, that abortion is murder and therefore morally wrong.

19. Lee believes—based on religious teachings—he is obligated to adhere to his conscience because he will stand before God to give an account for all that he does. Romans 14:12.

20. Lee declined to receive a COVID-19 vaccination because of his religious conviction that, based on his knowledge of the COVID-19 vaccines and their connection with aborted fetal tissue, to use any of these vaccines would have made him morally complicit in and a beneficiary of abortion. Lee believes that abortion is the murder of an unborn baby, which is prohibited by God in the Bible. Lee believes that abortion is an act like the acts of those in the Old Testament who worshipped Baal and Molech and committed child sacrifice. Lee believes that God will punish those who commit those acts.

21. Lee also believes that he has an obligation to seek exemption from immoral policies and to remain loyal to and love God despite any consequences that might be visited on him, like Daniel in the Book of Daniel.

22. Lee also believes that because vaccination, and "vaccination passports," have become more prevalent in the wake of COVID-19, his receiving the COVID-19 vaccine could be akin to receiving the "mark of the beast" as set forth in Revelation 13 and 18, and could subject him to eternity in hell for receiving it.

23. Lee also believes that his body is the temple of the Holy Spirit, 1 Corinthians 3:16-17, and as such, he cannot introduce things into his body which might affect his DNA, such as MRNA vaccines, which he believes modify DNA.

24. A true and correct copy of Lee's accommodation request describing some of his relevant religious beliefs is attached as **Exhibit 1 at Lee 001-005.**

25. Lee's religious objections to the COVID-19 vaccine are sincere, as the Bank admitted.

### The Bank's Policy and Lee's Request for Accommodation

26. In July 2021, the Bank informed its employees of its Policy requiring all employees to receive a COVID-19 vaccination or else submit a request for religious or medical accommodation, as applicable. Under the Policy, approved vaccines included Johnson & Johnson, Pfizer, and Moderna—each of which was either tested or developed using aborted fetal cells.

27. As part of its religious exemption process, the Bank created a form Request for Accommodation. The Human Resources & Inclusion Office informed Lee that he had until Friday, August 13, 2021, at 3:00 p.m. to submit his Request for Accommodation form.

28. On August 12, 2021, Lee submitted a complete and thorough Request for Accommodation to the Bank, explaining how its Policy was in direct conflict with his sincerely held religious beliefs. **Exhibit 1 at Lee 001-005**.

29. In August of 2021, the Bank informed Lee that it would accommodate, on a temporary basis, his religious beliefs forbidding him from receiving a COVID-19 vaccination.

30. As part of Lee's accommodation, he was required to wear a Bank-issued mask and maintain a physical distance from other employees. Then, in November 2021, the Bank subjected him to further ostracizing accommodation requirements.

### The Bank Abruptly Reverses Course, Revokes Lee's Accommodation, Fails to Engage in the Interactive Process, Fails to Accommodate Lee, and Terminates Lee Because of His Religious Beliefs.

31. On December 16, 2021, the Bank suddenly reversed course and notified Lee that it would no longer accommodate his religious beliefs because of a claimed "undue hardship."

32. The Bank's Policy conflicts with Lee's sincerely held religious beliefs because of his objection to the use of fetal cell lines in the testing and development of the vaccines available to Americans.

33. The Bank told Lee that he would have to receive his first vaccination dose no later than January 7, 2022, or he would be put on unpaid leave and then terminated.

34. Accommodating Lee would not have imposed, and does not impose, an undue hardship on the Bank.

35. Prior to the revocation of Lee's accommodation, the Bank had allowed him to mask and distance for months with full compliance and no problems.

36. The Bank did not require any employee to be vaccinated for several months despite the availability of the vaccines to all Americans in March and April 2021.

37. Between the time the vaccines were approved for all Americans and the Bank decided to force Lee to be vaccinated or be fired, there were hundreds of construction workers working within the Bank's building daily. Lee was required to screen these construction workers each day. During this time, he was doing in-person work with a greater volume of screenings than he did when the Bank was operating pre-COVID. Throughout that entire time, Lee masked and maintained physical distance dutifully, with no problems.

38. As part of its reasoning for revoking Lee's accommodation, the Bank claimed that, since employees were no longer going to be working remotely, the need to have close contact with a significant number of individuals would increase.

39. The Bank falsely claimed that it would be an undue hardship to allow Lee to mask and maintain physical distance because, so the Bank claimed, Lee could not consistently maintain physical distancing while performing the essential functions of his role.

40. The Bank's claim that Lee could not maintain adequate physical distancing while performing the essential functions of his role is false.

41. Upon information and belief, the Bank accommodates other employees who must be in close proximity to their fellow employees as part of a hybrid on-site and remote work arrangement.

42. Lee's regular post—as was true of many posts—was a single-man post. He would spend much of his day in a small room by himself. Most of the devices he used to screen an individual seeking entrance to the building were devices that did not require him to be near the individual.

43. The Bank refused to engage in any meaningful discussions with Lee about any further accommodations or any other jobs with the Bank that would allow him to maintain his employment.

44. Before he was put on unpaid leave, on January 3, 2022, the Bank announced that the return to in-person work at the Bank would be delayed beyond January 10, 2022, to late February 2022.

45. The Bank did not extend Lee's accommodation until the return to in-person work, even though that was the Bank's chief (pretextual) reason for setting the January 7 deadline for his being vaccinated and the January 22 termination date if he was not.

46. On January 7, 2022, the Bank placed Lee on unpaid leave to be terminated on January 22, 2022. Lee was terminated for his refusal to receive a COVID-19 vaccination.

47. Both prior to and subsequent to Lee's termination, the Defendant received many individuals into its building that it did not require to be vaccinated or ensure were vaccinated for COVID-19, such as contractors and customers.

### The Defects of the Bank's Vaccination Mandate

48. At the time the Bank revoked Lee's accommodation and forced its employees to get vaccinated or be fired, evidence was publicly available to the Bank that demonstrated that the COVID-19 vaccines available to Americans do not reduce transmission of the COVID-19 virus but instead only protect the individual recipients of the vaccine from serious infection. *E.g.,* Jennifer Frazer, "The Risk of Vaccinated COVID Transmission Is Not Low, *Scientific American*, Dec. 16, 2021, available at https://www.scientificamerican.com/article/the-risk-of-vaccinated-covid-transmission-is-not-low/ (last visited March 10, 2023); Carlos Franco-Paredes*,* "Transmissibility of SARS-CoV-2 among fully vaccinated individuals," *The Lancet*, Jan. 1, 2022, *available at* https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(21)00768-4/fulltext (last visited March 10, 2023).

49. Further, measures other than mandatory vaccination, such as temperature checks, mask-wearing, social distancing, regular testing, and quarantining of infected individuals are as effective, if not more effective, at controlling the spread of COVID-19 than mass-vaccinating the population, all of which Lee was willing to do.

50. Given that the "safety risks" posed by Lee have been the only interest identified by the Bank, and given that safety is advanced little or not at all by the vaccination mandate imposed by the Bank, the Bank's mandate lacks a rational basis, much less a compelling state interest, and is not narrowly tailored to advance any government interest.

51. The Bank's decision to deny Lee an ongoing accommodation after initially granting him one cannot be justified under either the rational basis or compelling interest test.

## CAUSES OF ACTION

### Count One
### 42 U.S.C. § 2000bb et seq.

### Violation of the Religious Freedom Restoration Act (RFRA)

52.     Lee reincorporates the foregoing as if fully written herein.

53.     The Bank is subject to RFRA because it is an "instrumentality" of the Federal government. 42 USC §2000bb-2(2).

54.     RFRA states that the government shall not substantially burden a person's exercise of religion, even by means of a rule of general applicability. 42 U.S.C. § 2000bb-1(a).

55.     RFRA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C. § 2000cc-5(7)(A).

56.     The exercise of religion involves not only belief and profession but also the performance of (or abstention from) physical acts for religious reasons.

57.     Lee sincerely believes that the exercise of his religion prevents him from submitting to injection with any of the available COVID-19 vaccines.

58.     The Bank has not contested the sincerity of Lee's beliefs that the exercise of his religion prevents him from receiving a COVID-19 vaccination.

### *Substantial Burden*

59.     RFRA imposes strict scrutiny on all actions of the federal government (including the Bank as a federal "instrumentality") which substantially burden a person's exercise of religion. 42 U.S.C. § 2000bb-1(b).

60. A person's exercise of religion is substantially burdened whenever a measure imposes substantial pressure on an adherent to modify his or her behavior and to violate his or her beliefs.

61. A vaccination policy that terminates the employment of a person who refuses vaccination on account of his religious beliefs presents a substantial burden on that person's exercise of religion.

62. Because Lee's religious beliefs prevented his receiving a COVID-19 vaccination, the Bank's Vaccine Policy imposed on Lee the choice between violating his religious beliefs or else being terminated and losing his livelihood.

63. By pressuring Lee to violate his religious beliefs in order to retain his employment, the Bank imposed a substantial burden on Lee's exercise of religion.

### *Strict Scrutiny Analysis*

64. Under RFRA, the Bank's Vaccine Policy is subject to strict scrutiny because it imposes substantial burdens on Lee's religious exercise. 42 U.S.C. § 2000bb-1(b).

65. Strict scrutiny requires that, before imposing a substantial burden on an individual's exercise of religion, the government must demonstrate that application of the burden to that particular individual (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means to achieving that interest.

### *Defendant Has No Compelling Interest*

66. Under RFRA, the Bank must establish that it has a compelling governmental interest in imposing a religious burden on Lee.

67. The Bank must show a compelling governmental interest and prove that terminating Lee's employment unless he consented to being vaccinated was the least restrictive means possible in achieving that alleged interest.

68. As demonstrated by Lee's ability to perform the essential functions of his job for over 18 months while practicing masking and social distancing without incident, as well as by the fact that the Bank initially granted a religious accommodation to him under circumstances not materially different than those when it revoked that accommodation, the Bank does not have a compelling governmental interest in burdening Lee's religious practice by mandating his vaccination. There is no rational basis, much less a compelling governmental interest, in terminating Lee's employment for lack of COVID-19 vaccination.

69. The Bank ignored the fact that Lee was doing his job throughout the pandemic, both before he was granted an accommodation and after, with no material difference in his job duties and with no problems.

70. During the time since COVID-19 vaccines became available, and during the months since Lee had applied for a religious exemption, it had become established that COVID-19 vaccinations did not achieve the only possible legitimate purpose of the mandate—to prevent transmission of the virus to other employees, contractors, or customers.

### *Defendant Did Not Use the Least Restrictive Means*

71. The least-restrictive-means standard is exceptionally demanding in that it requires the government to show that it lacks any adequate less restrictive means of achieving its

desired goal. So long as the government can achieve its interests in a manner that does not burden religion, it must do so.

72. This standard requires the Bank to show that measures less restrictive of Lee's religious exercise could not address its purported interest in reducing the spread of COVID-19.

73. Requiring Lee to be vaccinated against COVID-19 is not the least restrictive means the Bank could have employed to serve its alleged compelling interest.

74. Lee was able to perform the essential functions of his job while adhering to the Bank's safety protocols that it deemed satisfactory for over 18 months without any adverse consequences.

75. At the very least, the Bank has an obligation to demonstrate that requiring Lee to be vaccinated is the least restrictive way of pursuing its interests. That requires demonstrating why other paths to the same goal are all inferior, which the Bank cannot do.

76. Moreover, the Bank cannot establish that requiring Lee to be vaccinated is the least restrictive means of pursuing a compelling interest compared to the means that have already been shown to be sufficient: i.e., allowing Lee to work while wearing a mask and social distancing as he had done for over 18 months.

77. The Bank violated RFRA and damaged Lee by doing so, as alleged herein. The Bank's wrongful actions caused Lee nominal, actual, and compensatory damages, and Lee is also entitled to his costs, disbursements, and reasonable attorney fees. 42 U.S.C. § 1988.

## Count Two
## 42 U.S.C. §§ 2000e, et. seq.

### Title VII Religious Discrimination

78. Lee reincorporates the foregoing as if fully written herein.

79. By the acts, policies, and practices set forth in more detail above, the Bank has discriminated against Lee in the terms and conditions of his employment on the basis of his religion, in violation of Title VII of the Civil Rights Act of 1964.

80. As alleged herein, Lee holds sincere religious beliefs that preclude him from receiving a COVID-19 vaccine.

81. Lee informed the Bank of those beliefs and requested a religious exemption and reasonable accommodation from the Policy.

82. When the Bank revoked his accommodation, it also failed to initiate the interactive process regarding his accommodation request.

83. The Bank made no effort to meaningfully engage in that process or to accommodate his sincerely held religious beliefs.

84. Beside the interactive process, the Bank failed to provide Lee with a reasonable accommodation, and instead terminated his employment, thereby discriminating against him because of his religious beliefs.

85. The Bank's failure to accommodate Lee has harmed and will continue to harm him.

86. By failing to engage in the interactive process or offer any reasonable accommodation, the Bank's discriminatory actions were intentional and/or reckless and in violation of Title VII.

87. Lee filed charges with the EEOC complaining of these discriminatory actions on August 29, 2022. **Exhibit 2 at Lee 006**.

88. He was issued a right-to-sue letter on January 11, 2023. **Exhibit 3 at Lee 007.**

89. By the acts, policies, and practices set forth in more detail above, the Bank has discriminated against Lee in the terms and conditions of his employment on the basis of his religion, in violation of Title VII of the Civil Rights Act of 1964.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Teng Lee respectfully requests that the Court enter judgment against Defendant and provide him with the following relief:

A. A declaratory judgment that the Bank violated Lee's rights under RFRA;

B. A declaratory judgment that the Bank violated Lee's rights under Title VII;

C. An award of nominal damages in favor of Lee because of Defendant's violations of Title VII;

D. An award of actual and compensatory damages in an amount to be proven at trial, including back pay, front pay, treble damages and statutory penalties, interest, emotional distress and pain and suffering, and any damages or penalties available at law;

E. Reinstatement to Lee's former position at the Bank, with credit for years of work service during the time he was illegally terminated, and wage and benefit increases consistent with what an employee in his position would have received during his illegal termination;

F. An award of punitive damages because of the Bank's intentional discrimination against Lee with malice and reckless indifference to his rights under RFRA and Title VII.

G. Reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988, upon post-judgment application for the same;

H. All and any further relief to which Mr. Lee may be entitled; and

I. A trial by jury of all such matters properly tried as such is requested.

**UPPER MIDWEST LAW CENTER**

Dated: April 6, 2023

    */s/ James V. F. Dickey*
James V. F. Dickey (#393613)
Dustin T. Lujan (#0403962)
8421 Wayzata Blvd., Suite 300
Golden Valley, Minnesota 55426
James.Dickey@umlc.org
Dustin.Lujan@umlc.org
(612) 428-7000

*Attorneys for Plaintiff*